UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                                       )<br>DAVID CHARLES MISH, JR.,           )<br>)<br>Defendant.                                 )<br>_____) | No.   21-cr-112 (CJN) |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

David Mish, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.

Mr. Mish is a 43-year-old man who has a past filled with hardships and tragedy. At the young age of 14, he was kicked out of his already broken home and had to figure out how to be a father and support himself. As such, he was unable to complete his education and has been a blue-collar worker ever since, typically laboring from the early morning to the late night often with little predictability or stability. When Mr. Mish was a young man, he tragically lost a child only days after he was born. This devastated Mr. Mish and sent him down a long path of deep depression where he developed severe alcoholism. It took Mr. Mish years to obtain sobriety after the heartbreak he experienced. Mr. Mish finally gained stability in his life, obtained steady employment, and was even close to purchasing his own home before the events on January 6, 2021 unfolded.

When Mr. Mish came home from Washington, D.C., he called law enforcement himself and told them he was there that day. Mr. Mish did not engage

1

in any violence, destruction of property, and had no negative confrontations with law enforcement.  He has sincerely accepted responsibility for his conduct.  Based on all of the factors discussed below, Mr. Mish respectfully requests that the Court impose a sentence of two days of incarceration and no fine.

## BACKGROUND

Mr. Mish entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021.  On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[1]"  After the rally, Mr. Mish, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside.  Mr. Mish did not participate in any violence, destruction or theft of property, and did not have any negative confrontations with law enforcement while entering or exiting the building.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing.  Congress has required

---

[1] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

## II. Imposing a Sentence of Two Days of Incarceration is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

### a. Mr. Mish's Personal History and Characteristics

Mr. Mish was born in Wisconsin where he has lived for most of his life. His parents divorced when he was 10 years old and he lived with his father primarily after their separation. Mr. Mish did not have much parental supervision as he never really had a strong relationship with his parents. Mr. Mish also had Attention Deficit Disorder as a young child that was never properly treated. As a result, Mr. Mish did not do well in school, although he later obtained his G.E.D. in 1999. Unfortunately, when Mr. Mish was only 14 years old, he learned that his girlfriend was pregnant with his child. Being a child himself at the time, he turned to his father for support. His father was so enraged that he kicked him out of the

3

house and refused to support him.  Mr. Mish was forced to go from place to place, residing with friends and various relatives taking whatever job he could to financially support himself and his daughter, Deven.  Mr. Mish eventually moved in with his daughter's mother and lived with them until she was about 13 years old when her mother ended the relationship with him.  Mr. Mish is still involved in Deven's life.  She is 27 years old and is working as a surgical assistant.

Mr. Mish found work in construction and has been employed at many different construction companies in Wisconsin.  He also joined the Local 599 Union.  A few years after his first daughter was born, he had a second daughter, who he is very close to and who is his main source of support.  Cheyenne Mish is 24 years old and is a nurse working in Wisconsin.  Cheyenne has a 5 year old son, Mr. Mish's grandchild, who means the world to him.  Cheyenne has explained that her son has autism and relies on her father for child care and emotional support.  In Cheyenne's sincere letter to the Court, she says that,

> "My dad is the reason my son had diapers on his bottom, clothes on his back, and a smile every day. He is selfless in everything he does…He genuinely cares for others and puts them before himself…He has worked so hard to be where he is today and I would be devastated to not have the only person I have left a phone call or drive away."

*See* Exhibit 1, Letter from Cheyenne Mish.  When Cheyenne was in middle school, Mr. Mish and her mother had another baby together in 2006.  Unfortunately, this baby died three days after he was born prematurely.  Cheyenne explained that it was due to her mother's drug abuse that caused severe complications with her brother.  Her mother recently passed away because of this

continued drug use that led to her overdose.  Mr. Mish's son died in his arms while he was holding him for the last time.  Mr. Mish was so devastated by his son's passing that he became severely depressed and began to self-medicate with alcohol.  He became dependent on alcohol for years.  Mr. Mish became sober approximately 8 years later.[2]

Years later, Mr. Mish reconnected with his father and established a better relationship with him.  His father owned an auto repair shop that Mr. Mish would visit frequently.  He even helped his father fix up the shop and painted it for him.  About 10 years ago, for unknown reasons, his father committed suicide in that shop.

Despite all of the hardships that Mr. Mish has experienced throughout his life, he is an honest and hardworking person who cares very much about his family.  Before January 6, 2021, Mr. Mish had stable employment and was in the process of purchasing his first home.  Mr. Mish drove to Washington, D.C. on January 6, 2021 because he was a Trump supporter who sincerely believed in what his former President told him.

   b.  **Nature and Circumstances of the Offense**

Mr. Mish is the one who initiated contact with law enforcement after January 6, 2021.  He was deeply affected by being in the vicinity where Ashli Babbit was shot and he wished to share any information he had with the authorities.  He called

---

[2] The government, in their sentencing memo, acknowledges that the majority of his prior criminal history consists of traffic offenses, however suggests that they "demonstrate a longstanding lack of respect for the law." *See* Gov. Sentencing Memorandum at pg. 10.  However, Mr. Mish was suffering from alcoholism at the time that most of these offenses occurred and struggled to break the cycle of having his license suspended while meeting the demands of a career that required him to drive.

them and told them what he saw and heard that day, knowing very well that this information would incriminate him. After he was arrested, he agreed to be interviewed by the FBI, without counsel present, and volunteered the fact that he traveled alone to Washington, D.C., attended the rally, and entered the Capitol building. This was Mr. Mish's first time in the nation's capital. He explained that he walked around, talked to some other rally attendees, and purchased a hat from one of the kiosks on the street. Mr. Mish had to go through security to be able to listen to the speeches at the rally. He then listened to President Trump speak and immediately afterwards, everyone in the crowd began chanting that they should go to the Capitol.[3] The former President told his supporters that they would go down to the Capitol *together* as he said, "we're going to walk down to the Capitol."[4] Unsurprisingly, Mr. Mish, along with almost the entire crowd, began walking down to the Capitol grounds. Mr. Mish arrived at the side of the scaffolding after the barricades had already been pushed down by previous rioters. Mr. Mish remembers seeing families with small children as he was moving forward. He then remembered that a man yelled, "They are letting us in!" Mr. Mish then proceeded inside the building waiving his flag.

---

[3] For an hour, President Trump encouraged his supporters to "fight" for him. He said, "We will not let them silence your voices…*we're* going to walk down to the Capitol, and *we're* going to cheer on our brave senators and congressman and women, and we're probably not going to be cheering so much for some of them…[if the election is certified], you will have an illegitimate president. That's what you'll have. And *we* can't let that happen…And *we* fight. *We* fight like hell. And if you don't fight like hell, you're not going to have a country anymore." *See* Brian Naylor, *Read Trump's Jan. 6 Speech, A Key Part Of Impeachment Trial*, NPR (Feb. 10, 2021), available at https://www.npr.org/2021/02/10/966396848/read-trumps-jan-6-speech-a-key-part-of-impeachment-trial.

[4] Id.

Mr. Mish observed hundreds of individuals inside the building. It was so crowded that Mr. Mish got pushed in certain directions until he was able to break free from the crowd. He saw a man trying to break a door and encouraged him to refrain from violence as he felt their purpose of being there was to voice their opinions to the politicians and not to hurt anyone. It was while he was using the bathroom that he heard glass break. He came out of the bathroom and heard the gunshot that ultimately caused the death of Ashli Babbit. Mr. Mish proceed to try to assist in getting her help by encouraging others to clear the path so they could bring her out of the building. Officers then tried to get the crowd to exit the building and Mr. Mish complied with their commands. He left the building with no incident at around 3:10 PM. Mr. Mish was very shaken up about what he just experienced and immediately after exiting the building, he got into his car and drove back to Milwaukee.[5]

About a week after he returned home, Mr. Mish called law enforcement himself because he felt like it was the right thing to do. He was deeply affected by Ashli Babbit's death and he felt like it was his responsibility to speak to law enforcement to explain what he saw and heard. He knew, that as a result, he was

---

[5] The government, in their sentencing memorandum, suggests that even after observing violence towards police and individuals breaking a mirror, that those events did not cause him to exit the building. *See* Gov. Sentencing Memorandum at pg. 9. However, when Mr. Mish met with the FBI, he explained that as soon as he entered the Capitol building, it was so crowded that he was being pushed in multiple directions and did not have control over where he was going. When he finally broke free and went to the restroom that is when he observed the broken mirror and admonished the individual who caused that damage. That is also when he heard the gun shot that ultimately killed Ashli Babbit and he immediately came out and began to record what was occurring with his phone as he was yelling for others to move out of the way so she could get help. Immediately thereafter, he left the building. At the time, he thought it was the right decision to record the incident because he did not know what happened and wanted to try to assist any future investigation.

incriminating himself and would be charged with a crime. Regardless of this, he made the unselfish and honest choice to call law enforcement and had a phone conversation with the Metropolitan Police Department the very next day on January 7, 2021.[6] Sure enough, he was arrested shortly thereafter and was interviewed by FBI agents on that same day. Mr. Mish acknowledged to the FBI that he regretted his decision to enter the Capitol building. He also explained he had no prior intent to enter the building but rather his original intent was to simply protest with his fellow Trump supporters.

Shortly after January 6, 2021, Mr. Mish was in the process of purchasing his first home. After the media reported on Mr. Mish's arrest, the mortgage company he was working with retracted their commitment to providing him with a loan and he was unable to purchase the home. That is just one of many collateral consequences Mr. Mish experienced as a result of his involvement in this offense. He has lost job assignments with work and is constantly worried about being fired. He has been in news in his local community and everyone knows about his legal situation, which has caused many people in his community to judge him.

---

[6] The government, in their sentencing memorandum, highlight a few seconds of this conversation where they think Mr. Mish is "downplaying" the violence that occurred that day. *See* Gov. Sentencing Memorandum at pg. 5. Those few seconds of him comparing the violence at the Capitol to what happens in Kenosha, Wisconsin does not reflect how he felt about that day or his remorse for being there. In that same conversation, he tells MPD that he encouraged individuals NOT to break things and to remain peaceful. *Call with D. Hendrick* at 4:14-4:53. He also tells Detective Hendrick immediately prior to his comments about Kenosha's violence that his purpose of being at the Capitol was to protest peacefully and not to hurt anyone or be destructive. It is also important to note that this conversation occurred the day after he came back from D.C. and he was still unaware of the injuries/deaths that occurred that day.

Although Mr. Mish made a grave mistake for entering the building, he showed immense compassion towards an individual that he did not even know by trying to assist her. He then showed good judgment by complying with the officer's commands to exit the building. Afterwards, his good consciousness caused him to contact the FBI to provide information as a citizen knowing that he would likely be charged with a crime. Rather than dwelling on what occurred, Mr. Mish got back to work and did not post anything on social media like some of the others did. Rather, he focused on his employment and is now working three jobs seven days a week. *See* Exhibit 2, Letters from Employers. He is mostly concerned about losing his most recent job with Steven's Construction where he builds skyscrapers from 7am-3:30pm. This is the most stable position he has ever had as in the past, he has had to bounce from job to job not being on payroll and accepting whatever shifts he can. A stretch of incarceration will likely lead to his termination.

Most importantly, Mr. Mish has sincerely accepted responsibility. Mr. Mish made a mistake, but that mistake should not define him and should certainly not diminish all of his positive attributes. In his letter to the Court, Mr. Mish expresses his remorse and says,

> "I should have stayed away from the capital. I should of made a better judgment call and now I cost the tax payers money which is something I never wanted to happen. I know now that I need to step back and think so I can make better choices in my life."

*See* Exhibit 3, Letter from David Mish.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate

9

## Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

The request for two days of incarceration acknowledges the need to promote respect for the law and provide just punishment. Mr. Mish was brutally honest about his actions at the Capitol building. However, he did not participate in any of the violence or destruction of property. Rather, he was encouraging individuals to be peaceful. Probation recommends 45 days of incarceration and the government recommends 30 days of incarceration. However, such sentences have only been imposed in cases with far more aggravating conduct. For example, in *United States v. Jancart*, 21-CR-148 (JEB), the court imposed a 45 day sentence of incarceration after the defendant pled guilty to Disorderly Conduct because the defendant, who was an Air Force Veteran, (1) brought a gasmask and two-way radios, (2) laughed and cheered when rioters broke through a police line, (3) entered the Speaker's conference room, (4) and posted statements after January 6 discussing a potential revolution coming. Mr. Mish brought only a flag to the Capitol, encouraged others to refrain from violence, and left the building immediately after he was told to do so.

Similarly, in *United States v. Matthew Mazzocco*, 1:21-CR-054 (TSC), the Court imposed a 45 day period of incarceration because the Court was troubled by the fact that the defendant (1) took a selfie of himself with rioters in the background forcing themselves into the Capitol building, and the Court did not believe that (2) he sincerely accepted responsibility because of text messages sent to family and friends sent after January 6 as well as social media posts. Mr. Mish, on the other hand, has sincerely accepted responsibility and only pulled out his phone to record

what was happening after the shooting of Ashli Babbit because he thought it would be important for a future investigation. He did not post it to social media but rather provided it directly to the authorities.

Likewise in *United States v. Edward Hemenway*, 21-CR-49 (TSC), the government recommended 30 days of incarceration because the defendant appeared to be entertained by the chaos and disorder that was around him and took a selfie of himself in a mob with his finger raised. Mr. Hemenway also had a criminal history. Mr. Mish had the opposite attitude as he clearly did not want there to be chaos or destruction as described in detail above. Mr. Hemenway was ultimately sentenced to 45 days of incarceration. Again in *United States v. Leonard Gruppo*, 21-CR-391 (BAH), the government recommended 30 days incarceration because they felt as though he destroyed evidence in an effort to obstruct their investigation and they did not feel as though he was remorseful until several months after January 6, 2021. The government is not alleging the above aggravating factors in this matter and so their recommendation for 30 days is more severe than what is appropriate.[7]

Although there is no case quite like Mr. Mish's case, *United States v. Jonathan Sanders*, 1-21-CR-384 (CJN), is more akin to the instant offense with the exception being the lack of remorse that was shown by Sanders to FBI during a recorded interview as well as some differences in what Sanders saw and observed

---

[7] *See also United States v. Lori Vinson*, 21-CR-355 (RBW) (government recommends 30 days of incarceration because defendant defended participation in riot by posting on Facebook and participating in multiple television interviews. The Court imposed 5 years probation and 120 hours of community service); *United States v. Jordan Stotts*, 21-CR-272 (TJK) (government recommended 45 days of incarceration because they felt as though the defendant did not accept responsibility after reading post-January 6 comments and alleged that he shouted at MPD officers. The Court imposed 24 months probation with 60 days of home detention).

11

while inside the Capitol building. Mr. Sanders was sentenced to 36 months of probation and 60 hours of community service. He was an Air Force Veteran with no criminal history. Mr. Mish acknowledges that he does have a criminal history, however his prior felonies occurred when he was only 18 and 19 years old.

The instant offense is also very similar to *United States v. Eliel Rosa*, 1:21-CR-068 (TNM). In that case, the Court imposed a sentence of 12 months of probation after Mr. Rosa voluntarily called the FBI to let them know of his involvement on January 6, 2021. Like Mr. Mish, Mr. Rosa heard Ashli Babbit being shot and then immediately complied with officer's commands to leave the building. Also like Mr. Mish, Mr. Rosa sincerely accepted responsibility and did not try to minimize or rationalize his actions after January 6, 2021. Mr. Rosa did not have a criminal history, however, which is why Mr. Mish believes the appropriate sentence should be two days of incarceration rather than probation. Mr. Mish, of course, does not wish to serve any jail time, however understands that continued supervision was not recommended by United States Probation and that there will not be much benefit from a term of probation. Mr. Mish asks for the chance to remain employed as a sentence of 30 or 45 days will most certainly cause him to be terminated from his employment.

Mr. Mish has already been deterred from future similar conduct. As stated above, he lost the chance to own a home and he has lost work assignments as a result of some of the media attention he received. Mr. Mish has been judged by his community already and only wishes to live a simple life moving forward. Mr. Mish

has also had to navigate making time for all of his legal responsibilities with his case in a career where every hour makes a financial difference in his life. Despite that, he has appeared for all court hearings, has been compliant with supervision, and has met with counsel when requested.

## CONCLUSION

For the reasons stated above, Mr. Mish respectfully requests that the Court impose two days of incarceration and that he be able to self-surrender and report on a weekend to serve this time. Mr. Mish also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org